### STATE ex v COOK

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided October 19, 1931

W. H. Hill and M. W. D'Errico, Cleveland for plaintiff.

Ray T. Miller, and E. F. Westenhaver, Cleveland for defendant.

**VICKERY, J.**

Before a court can issue a writ of mandamus the right of the applicant therefor must be clear and unequivocal, and the officer that he seeks to compel to do an act must have no option but to do the act. If there be a doubt or the right be questionable, the court should hesitate to issue a writ of mandamus.

At the hearing one of the petitions which it was sought to have the clerk file without the pre-payment of costs or the security being given, is before us having been admitted in evidence. Apparently, from an examination of this petition, the pleader has confused two sets of statutes for he brings his action on the relation of William H. Millikan as though he were a taxpayer and predicates his right to bring such a suit on the theory that the banks, the various defendants in the suits proffered, are withholding from the county money that is due the county, and in such event the statute made in such cases provides that the prosecuting attorney shall bring the suit; and upon a demand of any taxpayer and the refusal of the prosecuting attorney, the taxpayer may himself bring the suit and in the event of recovery in such case the taxpayer shall be allowed reasonable compensation for his attorney in such amount as the court granting the relief shall order paid out of the amount realized from the suit.

Now glancing at one of these petitions it

will be apparent that the attorney's fees was one of the paramount things in the minds of the lawyers who seek to file this petition, and one could not blame the filing clerk for refusing to file such a petition until Rule No. 21 of the Cuyahoga County Common Pleas Court should be complied with, which in effect is that whenever a taxpayer's suit is brought in the name of a taxpayer after the prosecuting attorney has refused to bring such suit, no such petition shall be filed unless security for costs be given, and the court under its rule has fixed the minimum amount at twenty-five dollars in each case.

When these petitions were proffered the filing clerk called attention to Rule 21 and refused to file the petitions until the rule had been complied with. The complainant, whatever his status, saw fit to refuse to comply, for to comply would have required the sum of five hundred dollars to be put up for these twenty suits. Thereupon he brought this action in mandamus to compel the clerk to file the petitions without the prepayment of costs or the giving of security therefor and to issue summons in each case.

One could not blame the filing clerk for refusing to file these petitions without a compliance with the rule, thinking that this was a taxpayer's suit; for all the allegations with respect to notice to the prosecutor and his refusal and the demand for attorney's fees, come clearly within the taxpayer's suit statute, and the heading of the petition is the same as it would be in a taxpayer's suit. Hence, we say, no one could blame a filing clerk for refusing to file the petitions, but upon an examination we find that this suit was not predicated on the taxpayer's suit statutes Nos. 2921, 2922 and 2923 but under other statutes, to-wit, No. 9864 to 9872 inclusive, and we must discover whether from these statutes the party has a right to the writ of mandamus, for, as already stated, unless the right be clear and unequivocal a court should not issue the writ.

Let us examine these statutes: the first being §9864 GC provides that banks shall report to the Probate Court the deposits of unknown depositors each year, and §9865 GC defines who are unknown depositors, and here comes one of the difficulties. In §9865 GC the legislature defined an "unknown depositor" to be one who has a deposit in a bank which he has not added to nor taken from, and has not presented his bank book for the period of seven years to have the interest added to it. Such a depositor shall be "deemed an unknown depositor." The vice of this definition will be alluded to a little later.

Secs 9871 and 9872 GC provide as follows:

"9871. RECOVERY AND DISPOSITION OF PENALTIES.—The penalty so imposed shall be recovered by action in the name of the state, before any court of competent jurisdiction; and when collected, shall be paid to the treasurer of the county in which the judgment therefor is recovered. One-half thereof shall be by such treasurer credited to the general fund of such county, and one-half thereof be by him held for the use of the state."

"9872. WHO MAY SUE; DUTY OF PROSECUTING ATTORNEY.—The action provided by the preceding section may be instituted and prosecuted to judgment by any citizen of the state. The prosecuting attorney of such county hereby is required to institute and prosecute such action against every bank, company, association or person so designated, and located in such county, who fails to comply with the foregoing provisions."

Now it will be noticed that any citizen may institute and prosecute this suit to final judgment. The same section provides that the county prosecutor shall be required to institute and prosecute this suit.

The section which disposes of the proceeds after they are collected is unequivocal and provides that one-half shall be paid into the state treasury and one-half in the county treasury, and there is no allowance for attorney's fees in any way, shape or manner, as there is in the taxpayer's statute for monies that are withheld from the county. In that event, as already stated, the taxpayer may recover his attorney's fees. By the statutes under consideration the money is all disposed of and the taxpayer's counsel has no right to any compensation. (I fancy this theory will lessen the ardor of complainant's counsel).

Now it is interesting to note that there are more than two hundred different statutes in our General Code which provide for the assessing of penalties and the collection thereof, and in the instant case there are petitions which contain as many as one hundred and ten different causes of action, and all the suits that are attempted to be filed, if the collections were made, would bring in over one-half to one million dollars to be divided equally between the state and the county.

Some of the petitions go back to the origin

of the law more than forty years ago, and have a cause of action against certain banks and their constituent members by reason of consolidations which amount in one case to one hundred and ten different causes of action. Now the mere costs, to say nothing of the time it takes of public officers in handling this sort of litigation, surely demand some consideration as to where the costs are coming from, in the event that the party who loses cannot pay. In the instant case it is frankly admitted that the party who brings this suit, or whose name is used, is not a taxpayer. He does not pay a dollar's worth of taxes and therefore he would be execution proof if he failed to win and the costs should be assessed against him. It is equally true that he is a citizen and under §9872 he has the right to institute and prosecute to judgment a cause of action, but that taken in connection with the latter half of that section which provides that such suits shall be instituted and prosecuted by the prosecuting attorney of Cuyahoga county seems to imply that the person whose name is used is nothing more than an accusing witness or informer, and his lawyer must of necessity be the prosecuting attorney, and I apprehend that if such a suit were maintainable at all and the prosecuting atorney refused to bring such suit, he could be compelled by mandamus to institute the suit.

I know it is argued that in forcing an unwilling prosecutor to bring a suit, the best results might not be obtained, but that is aside from the question. This court held in the case of State ex rel Edward C. Stanton v. Stannard, No. 5518, decided July 1, 1924, and reported in Volume 32 Unreported Opinions Court of Appeals, page 421, that the prosecuting attorney could not adjust or settle a taxpayer's suit without the consent and approval of the taxpayer, and probably the same thing would be true in respect to a citizen. However that might be, that is no argument against the county prosecutor bringing and maintaining these suits. As already stated, before mandamus can be maintained the right must be clear and unequivocal.

Now we think there are several reasons why this right in the instant case is neither clear nor unequivocal. In the first place the suit is not prosecuted right. It must not be prosecuted in the name of the state on the relation of the individual. The suit should be brought by the state of Ohio, and not on the relation of anybody. Nobody's name should be coupled with the suit any more than an informing witness or prosecuting witness should be named in an indictment. It is the state of Ohio; the state of Ohio created the penalties and the state of Ohio is the only one who could enforce the penalties.

There is an illuminating case decided by Judge Jones way back in 1879 when Judge Jones occupied the Common Pleas bench of Cuyahoga county; and it is reported in Second Cleveland Reports at page 44, entitled.George Gause v. The L. S. and M. S. R. R. Company. This action was under a different statute, but it was for the collection of a penalty and much more in point than the instant case. That was under a statute which provided that railroad trains when heated must have such a heating apparatus that upon overturning of the car the fire would immediately be put out, and if a railroad should run a train of cars without such heating equipment, the railroad company would be liable to a penalty. The statute further provided that upon recovery of this penalty, the informer should have fifty percent and fifty percent should be paid into the county treasury of the county in which the railroad was located. Under this statute a suit was brought by an informer in his own name, to recover a penalty. A demurrer was filed upon several grounds and the case was carefully considered by Judge Jones, and while he overruled the contentions of the demurrant in some particulars, he did sustain it on the ground that the party had no capacity to bring the suit. In the course of his decision he remarks as follows:

"There are a large number of authorities in other states which hold with almost unvarying unanimity, that where a penalty is given by a statute, either in whole or in part, to an informer, that he cannot for that reason maintain the action; but can only do so when he is expressly authorized by the statute to maintain the action in his own name, and this evidently so on principle, as well as authority. The state makes the law, creates the penalty, owns and enforces the collection of it, and it only can maintain an action for it, unless it has delegated the right to someone else in distinct terms to sue for and collect in his own name."

Judge Jones held that although the statute then under consideration provided that the informer was entitled to one-half the penalty, yet inasmuch as the statute did not expressly authorize him to maintain the suit, he could not maintain it in

his own name, nor on the relation of the state, but the suit must be prosecuted by the state of Ohio, and for these reasons, he sustained the demurrer and dismissed the complaint.

Now if that were true under that statute, it is much more true under the statute now under consideration. In our judgment the party who brings this suit has no interest in the outcome of it, no financial interest, no other interest. He simply is an accusing witness, or an informer, and in a criminal prosecution he would be the complaining witness, and that is all he is in this instance; and had he brought the information to the prosecutor and the prosecutor refused to bring the suit as is provided in the same section which authorizes the citizen to bring the suit, the prosecutor would have been compelled, if the law were a valid law, to maintain the suit, but the prosecutor declining, it would not give the informer the right to maintain the suit. Therefore, the party filing these suits having no right to maintain them in the manner and form in which they were brought, no court will mandamus the clerk to file a paper when on its face there is no right for it to be filed.

But over and beyond that, a reading of this law will show the utter confusion in which the Legislature was when it passed it. As already stated, it was passed more than forty years ago and, strange as it may seem, there has not been a single adjudication of this law during the entire period that it has been on the statute books. There has been no construction of it by any court decision in so far as we now learn, nor has one been pointed out to us. Now the reason for that apparently is that nobody had any faith in this law. A more confused piece of legislation one could hardly find. For example, it says a citizen may institute a suit (note the statute says may) and prosecute to judgment, while in the very same section of the statute it says the prosecuting attorney "is required to institute and prosecute **such** action." Now that word "such" refers to the former part of the section; that is, it makes the citizen nothing more than an informer, or prosecuting witness, if you please, to call the attention of the prosecuting attorney to bring this suit, and the officer is the only person who could use the name "The State of Ohio" to maintain the suit. Therefore, there is confusion in that respect, and the argument is strongly for the construction that we put upon this statute; that no one but the prosecuting attorney could maintain this suit. And inasmuch as all the

money is appropriated by the statute, one-half to the state and one-half to the county, no allowance being made for attorney's fees, the prosecuting attorney being the legal adviser and being paid by a salary he must perform these services gratuitously with other duties he must perform as an officer. If any other conclusion could be reached, then any citizen can mulct the state of Ohio into large costs without its consent.

But that is only a minor confusion. Note the definition of who are unknown depositors. Note the manner in which the legislature seemed to appropriate and confiscate the property of a depositor. To illustrate: A person wishing to provide a sum for his future needs deposits a sum in a bank intending to leave it there, to forget it, if you please, until some time in the future. He does not add to it, he does not draw the interest, he does not do a thing with it. He is in and out of the bank every day. He has other accounts that are workable and alive. The bank officials see him every day and know him, and yet under this statute he is an "unknown depositor" and after seven years that deposit must be reported under a penalty of five hundred dollars to the Probate Judge, and after eight years it must be transferred to the county treasury, without the depositor's knowledge, without his consent, and henceforth when he wants to reclaim it,—the interest has ceased,—he can only recover the sum which the bank turned over to the county treasury. In other words, his money is taken from a source where he thought it would be safe and drawing interest, and a source upon which he relied for his future welfare and, without his knowledge or consent, is put in the hands of another custodian, which may or may not be good; but in any event, his right to interest after the county treasury received it has been cut off.

We say that this violates the constitution of the state of Ohio and the constitution of the United States. It interferes with the freedom of contracting. It alters and changes the obligation of a contract. It violates the principle laid down in the **Dartmouth College** case and hundreds of cases since that time. Do not think that this is a fanciful notion, for I have in mind now an instance in which a party, wishing to provide a fund to take care of funeral expenses and such things at her decease, deposited a certain sum in one of the Cleveland banks some twenty years ago. The party has been in and out of the bank ever since and has had other deposits in that bank, and yet, according to that stat-

ute, this person is an unknown depositor and the money could be taken and deposited with the county treasury and her interest in this fund would cease after it has been deposited.

I have two other cases in mind in this county where these very things are taking place. The depositors are no more unknown than any other depositor who goes in the bank every day. The Legislature cannot by a mere statute make, white black or black white. Because the Legislature says that under a certain sunlight a black object shall be white, that does not make it white; it is black just the same, and so when it defines an unknown depositor it cannot make someone known unknown by a mere definition.

As there are other defects and flaws in this statute we have come to the conclusion that the statute is so uncertain in its terms, so contradictory, so unjust and so utterly incapable of enforcement, that we have no hesitancy in declaring the statute invalid and of no effect. Now if that be so, then the party filing these suits has no right to mandamus the clerk, and the court would be doing a wrong thing to mandamus him to file them.

It would seem that in all the forty odd years that this law has been on the books, if it had any force or efficacy, it would have been invoked long years ago and there would have been a decision upon it. We think it is very inopportune and unwise at this time, if it was ever wise, which we doubt, to bring such suits. The uncertainty of finances is not made any better by bringing suits against financial institutions for one-half to one million dollars in so-called penalties when the right is not clear, and the right of the party to maintain these suits is surely anything but clear. We think it is clear that the way these suits are predicated, they cannot be maintained. If they are maintained at all, it must be by the state of Ohio, and they must be prosecuted by the prosecuting attorney, and if an action were predicated in mandamus against the prosecuting attorney, if the law itself was valid, he might be mandamused to file a suit, but the clerk cannot be compelled to receive these petitions either with or without costs, by mandamus.

The conclusion that we have come to, therefore, is that the writ of mandamus will be refused and the petition dismissed.

LEVINE, PJ and WEYGANDT, J, concur.